IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRENCE J. ESKOLA,

                                         OPINION and ORDER

             Plaintiff,

                                      09-cv-0410-bbc

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought under 42 U.S.C. § 405(g). Plaintiff Terrence J. Eskola seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). Plaintiff contends that the administrative law judge erred in rejecting the opinions of plaintiff's treating physicians and did not properly consider all the evidence.

I disagree with plaintiff that the administrative law judge erred in rejecting the opinions of two of plaintiff's treating physicians in favor of the evidence of other treating, examining and consultative doctors who found that plaintiff did not have any history of

significant disc disease.  However, I agree with plaintiff that the administrative law judge did not carry out his obligation to evaluate the credibility of plaintiff's accounts of pain or the effects of the medication he was taking.  The administrative law judge found that plaintiff's "medically determinable impairment" could reasonably be expected to produce the alleged "symptoms" but that "plaintiff's complaints of the intensity, duration and limiting effects of these symptoms were not entirely credible."  He did not explain this finding and he did not evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited plaintiff's ability to do basic work activities, as he was required to do under the social security regulations.   As a consequence, I cannot review his decision on this point.  Therefore, it is necessary to remand this case to the commissioner, for further consideration of plaintiff's complaints and the effect of his medications.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background

Plaintiff was born on February 26, 1960.  AR 79.  He has a high school education and has worked as a construction worker.  AR 17.  Sometime in the 1990s, he had a neck injury at work, for which he had fusion surgery at C5-6 and C5-7 in 1998.  He injured his neck at work again on March 6, 2000.  Four years later, in June 2004, he was injured in a cave-in

2

on a construction site.  He applied for workers' compensation benefits and eventually received an award of $106,000.

In September 2006, plaintiff filed an application for social security disability insurance benefits, alleging that he had been unable to work since June 21, 2004 because of his neck injury.  AR 107.  A hearing was held on May 7, 2008 before an administrative law judge, who heard testimony from plaintiff, AR 482-97, and a neutral vocational expert, AR 497-504, and issued an opinion on September 10, 2008, finding plaintiff not disabled.  AR 12-19.  This decision became the final decision of the commissioner on May 5, 2009, when the Appeals Council denied plaintiff's request for review.  AR 5-7.

## B.  Medical Evidence

### 1. 2000

After plaintiff's second neck injury on March 6, 2000, he was seen on March 24, 2000, by Dr. Larry Teuber for a neurological consultation.  AR 304.  Teuber noted that plaintiff's x-ray showed good fusion at C5-6 but that a scan showed the fusion at C6-7 was incomplete but adequate.  He concluded that plaintiff had a cervical strain or soft tissue injury.  AR 307.

In August 2000, plaintiff's then treating physician, Dr. Mark Simonson, returned plaintiff to work with lifting restrictions:  lifting and carrying 25 pounds frequently, 35

3

pounds occasionally and 45 pounds rarely.  AR 287.  At that point, plaintiff had been treated by Dr. Simonson for about five months with physical therapy, limited use of medications, trigger point injections and facet joint injections.  AR 285.

### 2. June 2004

On June 21, 2004, plaintiff was seen at an emergency room after 200 pounds of dirt fell on the back of his head and pressed his neck to his chest.  AR 155.  His neck was found to be supple and he was able to turn it against resistance.  His diagnosis was multiple contusions secondary to dirt cave-in.  AR 156.  A week later, a thoracic MRI showed minimal degenerative change at the C3-4 level with no evidence of vertebral offset or fracture, a normal cord signal and no evidence of syrinx or epidural hematoma.  AR 158. At C3-4 and C4-5, there were mild broad based protrusions with relatively mild effacement of the ventral subarachnoid space, no cord contact or effacement and multilevel thoracic disc protrusions, including a right paracentral protrusion at T5-6 that mildly effaced the cord. AR 158-59.

### 3. July 2004

Plaintiff saw Dr. Anil Kumar for the first time in July 2004.  Kumar noted the MRI findings described above.  Plaintiff reported numbness in his hand; Kumar suggested he take

ibuprofen if he did not have resolution of his neck and back pain in one to two days and come back if the numbness in his hand was not better.  AR 240.

4. August 2004

On August 3, 2004, plaintiff saw Dr. Thomas Rieser at the Midwest Spine and Orthopaedics clinic.  Rieser noted that plaintiff's 1998 fusion at C5-6 and C6-7 was excellent.  On examination, he found that plaintiff had some discomfort over the paraspinal muscles and trapezius on the left side and along the left side of the mid-thoracic region to palpation but no muscle spasm.  Cervical spine range of motion was 75% of normal flexion and normal extension.  Rieser's diagnosis was myofascial sprain or strain of the cervical spine and thoracic spine.  He recommended that plaintiff return to work in two weeks with a 30-pound lifting restriction.  AR 338.  In addition, he referred plaintiff to physical therapy.  AR 162-164.

On August 18, Dr. Kumar examined plaintiff for followup of neck pain radiating from the C-3 area down to his left shoulder, for which plaintiff had been taking flexeril and vicodin at night.  Kumar noted that plaintiff's forward neck flexion was 15 degrees with 15 degrees on either side and extension at 10 degrees.  AR 238.  Kumar prescribed hydrocodone and flexeril as needed.

5

5. October 2004

Plaintiff saw Dr. Rajiv Aggarwal, a neurologist, on October 28, 2004, on a referral from Dr. Kumar.  AR 179.  Aggarwal examined plaintiff and noted that he had myofascial tightness in his neck and was complaining of tenderness in the paracervical and mid thoracic areas. AR  180.  Aggarwal noted the MRI results described above. AR 179.  Plaintiff denied having any numbness or tingling in his arms or legs.  Id. In Aggarwal's opinion, plaintiff's neck and mid-thoracic pain was primarily myofascial in nature and his headaches were sacrarthrogenic  in nature, with a significant rebound complement caused by plaintiff's use of vicodin and tylenol.  AR 181. He recommended that plaintiff stop using tylenol and vicodin and he prescribed a prednisone tapered dose to break the daily headache cycle and to improve any inflammatory complement in the paracervical and mid-thoracic muscles. Id. He recommended the use of a muscle relaxant on an as-needed basis and planned to start plaintiff on nortriptyline.  If this did not improve the myofascial pain in a few weeks, he would consider a trigger point injection in the thoracic area.  Id.

6. November 2004

On November 11, 2004, plaintiff saw Dr. Timothy Garvey, who found on examination that plaintiff's cervical range of motion was limited at the mid one-third range of motion.  AR 192.  Garvey recommended aerobic conditioning, light upper and lower

6

extremity strengthening and avoidance of aggravating physical activity.  He returned plaintiff to light duty work with only two hours' total driving time in a day, minimal prolonged flexion and rotation activities of the cervical spine and lifting 10 to 25 pounds from waist height to shoulder height intermittently.  He noted that surgical intervention would be a last option.  AR 193.

Plaintiff saw Dr. Kumar on November 11, saying that he had seen Dr. Garvey and was concerned about the work restrictions "that may need to be in place." AR 232.  He told Kumar that he was driving to the cities and driving around looking for parts, for a total driving time of about six hours a day.  Id.  Kumar noted that driving six hours a day was beyond plaintiff's capability at the time.  Id.

7. December 2004

Plaintiff returned to Dr. Kumar on December 30, complaining of pain and saying that Dr. Garvey believed that he was capable of working a desk job with limited driving to work. AR 230.  He reported taking ibuprofen to help him with pain and continuing to have some neck discomfort.  He was continuing to go to physical therapy.  Kumar assessed his lifting capacity as 10-20 pounds intermittently.  AR 230.

8. <u>March 2005</u>

Plaintiff returned to see Dr. Garvey on March 31, 2005, reporting continued pain after having two series of epidural injections.  Garvey found that plaintiff had neck pain with a radicular component that affected his left side more than his right.  He recommended a cervical discography and added that plaintiff did not appear capable of gainful employment, but that he could return to light-duty employment within three to six months, if he had the recommended surgery. AR 194.

9. <u>April 2005</u>

On April 15, Dr. Kumar prescribed percocet for plaintiff's pain.  AR 224.  At the time, plaintiff said he had been taking five to six vicodin tablets daily without noting much help from the medication.

Plaintiff saw Dr. Garvey again on April 28, 2005, after having a discogram on April 12, 2005 that showed "7/10 concordant reproduction of pain at C3-4, 8-9/10 concordant pain at C4-5," and little or no pain at C7-T1.  AR 201.  Garvey recommended a two-level anterior cervical discectomy and fusion, with the goal of allowing plaintiff to perform light activity both vocationally and recreationally on a long term basis.  Garvey informed plaintiff that the risks of surgery included infection, blood loss requiring transfusion, failure of fusion, failure of pain relief and potential difficulties with swallowing on a long-term basis.  Plaintiff

8

agreed to proceed with the surgery.  AR 201-02.  Garvey advised plaintiff to remain out of work and plan to return to employment three months after the surgery.  Id.

After being discharged from physical therapy in April 2005, plaintiff reported to Dr. Rieser that he continued to have pain and reduced range of neck motion.  AR 178.

### 10. June 2005

On June 2, plaintiff told Kumar that he still had neck pain for which he was taking three to four tablets of oxycodone a day, as well as flexeril.  AR 220.  He said that he had stopped using his TENS Unit, but was still using a heating pad and had decided to have neck surgery.  Id.  He reported no numbness or tingling in his hands.  Id.

On June 17, 2005, plaintiff had an independent medical examination by Dr. William Monacci in connection with his claim for workers' compensation benefits.  Monacci submitted a report of his independent medical examination of plaintiff concerning his workers' compensation claim.  Plaintiff reported pain at the base of the cervical spine with radiation in the shoulders bilaterally, left greater than right, and occasional pain in the interscapular region. AR 325.  Monacci noted on examination that plaintiff had 60 degrees of cervical flexion and 20 degrees of extension, with pain at the base of the cervical spine on limits of extension.  AR 328.  He concluded that plaintiff had a mild limitation of cervical range of motion resulting from his 1998 fusion and no significant neurological abnormalities.

9

In his opinion, the June 2004 injury was a muscle strain.  Monacci limited plaintiff to work activity with a permanent 50-pound lifting restriction.  He did not recommend surgery and stated that in his opinion, a cervical discogram was unreliable in evaluating plaintiff's pain syndrome.  AR 330.

On June 18, 2005, plaintiff was seen in the emergency room with complaints of significant neck pain.  He was given oxycodone and told to follow up with Dr. Kumar.  AR 183.

11. July 2005

Plaintiff saw Dr. Kumar on July 5, 2005, for continuing neck pain.  Kumar wrote him a prescription refill for his oxycodone.  AR 217.

On July 15, 2005, plaintiff saw Dr. Raymond Hackett for complaints of penile curvature and marked pain with erection.  Hackett noted that plaintiff had marked lower urinary tract symptoms.  He recommended a cystoscopy, AR 185, and prescribed uroxatrol.

On July 28, 2005, in a letter to plaintiff's workers' compensation lawyer, Garvey stated that plaintiff's work-related injury on June 21, 2004 was a substantial cause of injury to his C3-4 and C4-5 discs.  Garvey's diagnosis was chronic cervical sprain or strain with injuries to the intervertebral discs at C3-4 and C4-5.  He concluded that it was unlikely that plaintiff would ever return to full gainful employment without surgery and that his

10

impairment appeared to meet a listed musculoskeletal impairment in Section 1.00.  AR 142-43.

## 12. September 2005

In September 2005, plaintiff returned to see Dr. Kumar with complaints of overall joint pain.  Kumar concluded that plaintiff's joint pain could be a side effect of the medication he was taking and changed plaintiff's medication from oxycodone to percocet. AR 212.

## 13. November 2005

Garvey saw plaintiff again on November 10, 2005.  Plaintiff reported worsening symptoms, including decreasing bladder function.  He wanted to discuss surgical options. Garvey wrote that he anticipated that plaintiff would have 80-90% chance of significant improvement of his symptoms over the next two to five years with surgical management. He thought that plaintiff's bladder problems might be caused by his cervical spine injury. Garvey repeated his opinion that plaintiff could return to light duty employment three to six months after surgery.  AR 196.

11

14. February 2006

After reviewing plaintiff's medical records, Garvey wrote again to plaintiff's workers' compensation lawyer on February 5, 2006, saying that plaintiff's original fusion was solid but that plaintiff needed a fusion at C3-4 and C4-5 because of his June 2004 injury. He added that it was his opinion that plaintiff's bladder problems were caused by the cervical injury. AR 350-51.

On February 9, 2006, state agency physician Pat Chan completed a physical residual functional capacity assessment of plaintiff, listing a diagnosis of cervical and thoracic pain. Chan found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with no other limitations. He noted the absence from the record of any treating source's statements regarding plaintiff's physical capacities. AR 250-57.

15. August 2007

After seeing plaintiff on August 15, 2007, Dr. Kumar wrote plaintiff's workers' compensation lawyer to say that plaintiff suffered from "cervalgia neck pain resulting from disc protrusion of the cervical spine at the level of C3-4 and C4-5," AR 440, and from a disc protrusion at T1-02 and T5-6 that impinged on his spinal cord and that he had numbness in his upper extremities. He wrote as follows:

> Dr. Garvey has seen Mr. Eskola and from my understanding he
> predicts a possible 50% chance that his symptoms may improve;
> however there is considerable risk with this surgery and there is
> also a chance of significant mortality with this surgery.

AR 440.  Kumar concluded that plaintiff's impairment met listing 1.04 because there was

evidence of nerve root compression and sensory loss in both hands.  AR 441.


16. March 2008

On March 7, 2008 plaintiff saw Dr. Thomas Stillwell, a urologist, who stated that

plaintiff had bladder urgency that was "secondary to probably spinal cord injury."  AR 464.


17. April 2008

Plaintiff saw Dr. Hackett on April 4, 2008, reporting that since he had been taking

uroxatrol and flomax his symptoms had improved markedly.  Plaintiff agreed to try avodart,

which Hackett had recommended for shrinking his prostate, and to stop the flomax.

Hackett wrote him a prescription for avodart.  AR 465.


C.   Hearing Testimony

Plaintiff testified at the May 7, 2008 hearing before the administrative law judge that

he last worked at Park Construction and stopped working when he was injured in a cave-in

13

on June 21, 2004.  AR 483.  He received a workers' compensation award of $106,000.  AR 484.  He testified that he cannot work because of pain and because he cannot drive while taking narcotic medication.  Id..  He testified that he took oxycodone and lyrica for the pain and that the medications made him light-headed and "hyper."   AR 485.

Plaintiff testified that he had had constant pain in his neck, back, hips and legs since his injury, AR 485-86, as well as constant, intense headaches.  AR 487-88.  He believed he would be unable to work because of the medication he was taking, and that his wife "is ordered to drive for [him]."  AR 484.  He said that he had tried going without the medicine but couldn't take the pain.  AR 484.  He testified that although his hands are numb and weak at times, AR 456, he can use a pen and paper and drink a cup of coffee. but he thought he would have trouble driving, running equipment or using a shovel.  AR 486.  Plaintiff testified that he took medicine for his bladder problems.  AR 489.  He does a little "scrapping" on the side to make ends meet (collecting aluminum cans and copper for resale), AR 483, but does not do much around the house.  AR 483, 488.

In response to a question from the administrative law judge about the fusion surgery Garvey had recommended, plaintiff testified that he had not had it because there were no guarantees it would be successful and he was not able to pay for it.  AR 491-92.

The administrative law judge called Edward Utities to testify as a neutral vocational expert and asked him whether an individual who could perform sedentary work with

frequent rather than constant climbing, balancing, stooping, kneeling, crouching and crawling and frequent rather than constant exposure to humidity and wetness could perform plaintiff's past work.  Utities testified that the individual could not perform plaintiff's past work but could perform sedentary assembly types of positions, including final assembler, (DOT #713-687-018), lens inserter (DOT #712-687-026), fishing reel assembler (DOT #732-684-062) and compact assembler (DOT #739-687-066).  He testified that there were 5,000 of these sedentary unskilled jobs within the state of Minnesota.  Utities told the administrative law judge that this testimony was consistent with the information in The Dictionary of Occupational Titles.  AR 499-500.  Utitites testified that if the hypothetical individual could not work an eight-hour work day he could not perform any jobs on a full-time competitive basis.  AR 500.

### D.  Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis, 20 C.F.R. § 404.1520.  He found that (1) the claimant was not currently employed; (2) he had the severe impairment of degenerative disc disease post cervical fusion surgery at the C3-4 and C4-5 levels; and (3) his impairment did not meet or equal one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1.  At step four, the administrative law judge found that plaintiff could

perform his past work, and at step five, he found that plaintiff retained the residual functional capacity to perform sedentary work and could frequently but not constantly climb ladders and stairs, balance, stoop, kneel, crouch and crawl and frequently work in areas of high humidity and dampness.   AR 15.   In making the step five determination, the administrative law judge concluded that plaintiff's allegations of total disability lacked a reasonable basis and were not credible.  AR 16.  He pointed out that Dr. William Monacci's examination showed no neurolgical abnormalities,  no problems requiring a surgical solution and only some mild restriction of cervical range of motion relating to the 1998 neck fusion. He added that Monacci's findings were borne out by the reports of Dr. Rieser, Dr. Syd Foster and Dr. Chan, whose proposed limitations would have been less restrictive than those the administrative law judge was imposing.  (Both Foster and Chan would have classified plaintiff as capable of light work; Rieser found him capable of lifting up to 30 pounds.)  The administrative law judge rejected the reports of plaintiff's treating physicians, Drs. Garvey and Kumar, who had  diagnosed major spinal problems.  These, the administrative law judge said, were "not consistent with multiple examinations and other clinical evidence of record."  The three other doctors, Rieser, Chan and Foster, and the state agency records corroborated the lack of any significant disc disease.

The administrative law judge went on to find that plaintiff could not perform his past work.  Having found that plaintiff had satisfied his burden as to the first four steps, the

16

commissioner assumed the burden of proving that plaintiff was capable of performing work in the national economy.  Id.  In finding that he could, the administrative law judge relied on the testimony of the vocational expert that there were 5,000 assembly and lens insertion jobs available in the immediate region that plaintiff could perform, a conclusion that the expert confirmed was consistent with the Dictionary of Occupational Titles.  AR 18.  In addition, the administrative law judge took into account plaintiff's young age (44 at the alleged onset of disability), his high school diploma, his work experience and his residual functional capacity.  AR 17.


OPINION

The two questions to be answered in reviewing the administrative law judge's decision in this case are whether substantial evidence supports his decision and whether he explained that decision in a manner that allows "meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).   In this case, the record contains ample evidence to support the administrative law judge's finding that plaintiff has no history of significant disc disease. Two doctors (plus Dr. Aggarwal, whom the administrative law judge does not mention) found no neurological problems that did not predate plaintiff's 2004 injury or any skeletal problems that would explain plaintiff's accounts of pain.  (It is not possible to know what Dr. Foster found or thought because the administrative record filed with the court does not

17

include any report from this doctor.)

The slightly more difficult question is whether the administrative law judge gave an adequate explanation for his decision to rely on the reports of the doctors who found no evidence of disability and to ignore the contrary opinions of Drs. Garvey and Kumar. It does not help that the administrative law judge's decision is so terse, but it is minimally sufficient to allow review of this finding. As the administrative law judge explained, plaintiff exhibited no neurological abnormalities on examination; instead, he showed normal strength and sensation, only mild limitation of range of motion and minimal degenerative changes. His cervical and thoracic scans showed no more than mild disc bulging and nothing in the record showed evidence of significant musculoskeletal disease that would support his complaints of hip and lower extremity pain.

The administrative law judge explained why he was not persuaded by the opinions of Drs. Garvey and Kumar. They suggested "a history of significant disc disease, but any reports of current major spinal problems are simply not consistent with the scans and other physical examination of record." AR 16. Moreover, "Dr. Kum[a]r's statement that [plaintiff] has depression, altered sensation, erectile dysfunction, insomnia, and neurological pain complaints attributable to spinal disorder are not consistent with multiple examinations and other clinical evidence of record and are therefore discounted." Id.

I recognize that the administrative law judge's decision is not without its problems.

18

The administrative law judge noted that Dr. Monacci's evaluation of plaintiff's condition was "basically consistent with the reports of Dr. Larry Teuber from the Spine Center and Marshfield Clinic," without mentioning that both of the latter reports predate plaintiff's 2004 injury.  (Teuber's report dates from 2000 and the Marshfield Clinic report is from 1998.)  He noted that Dr. Foster had found that plaintiff could perform light work, but Dr. Foster's opinions are not in the administrative record.  However, these problems do not undermine the validity of the decision.  Plaintiff's most serious neck injury was his first one, which led to a fusion in 1998.  It is relevant that in 1998 he showed no neurological abnormality or anything other than mild restriction of cervical range related to that fusion.  As to Dr. Foster's report, I have no reason to think that the administrative law judge did not review it and summarize it accurately even though it was not included in the record filed with the court.  In any event, neither Foster's report nor the dates of the Teuber examination and the Marshfield Clinic report are critical to the administrative law judge's decision.  He had enough other medical evidence developed after the March 2004 accident to determine the seriousness of plaintiff's musculoskeletal impairments.

Although Dr. Kumar is considered a "treating physician" under 20 C.F.R. § 404.1527(d)(2), it does not follow that his opinion must be accepted for that reason alone.  The regulation requires the administrative law judge to give controlling weight to the opinion of a treating physician but only if the opinion is "well-supported by medically acceptable

19

clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." Id. In this case, the record evidence contradicted the opinions of the treating physicians, leaving the administrative law judge free to disregard their opinions if he found them unsupported, as he did.

Plaintiff contends that the administrative law judge failed to consider Kumar's (and Garvey's) opinions, but he is wrong. It is true, as plaintiff argues, that the administrative law judge did not discuss Garvey's and Kumar's opinions that plaintiff's discogram showed that he needed a fusion of C3-4 and C4-5 and that he could not work without having the operation, but he explained why he did not find either doctor persuasive. He provided good reasons for the weight he gave their opinions and based his decision on substantial evidence and not mere speculation. White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999). This is not a case in which the only contradictory evidence is the opinion of a non-examining physician, e.g., Gudgel v. Barnhart, 345 F. 3d 467, 470 (7th Cir. 2003) (holding that by itself, contradictory opinion of a non-examining physician does not trump that of an examining physician). The administrative law judge relied on the opinions of Dr. Rieser, who examined plaintiff in August 2004, and on Dr. Monacci, who examined plaintiff in June 2005, as well as on the lack of any clinical support for Garvey's and Kumar's opinions.

The administrative law judge devoted part of his decision to plaintiff's bladder symptoms. Without saying how he reached the conclusion, he said that plaintiff's

20

"complaints are possibly related to having been struck by a shovel but are not due to cervical disease or other spinal problems." AR 15. At a later point, he wrote that "Dr. Kumar cites certain bladder symptoms as being attributable to neurological complications of the claimant's spinal disorder while it is quite clear that those arose from prostate enlargement or Peyronie's structure from a totally discrete injury." AR 17. His comments suggest that he may have been substituting his own view of the evidence for that of the doctors, which would be improper. E.g., Similia v. Astrue, 573 F.3d 503, 507 (7th Cir. 2009) (administrative law judge must refrain from "playing doctor"). However, the record supports the administrative law judge's view of the evidence. None of the clinical evidence shows any severe skeletal or neurological problem and no specific clinical findings to support Dr. Garvey's belief that the cervical injury was the cause of those problems or Dr. Stillwell's conjecture that it "probably" was. AR 464. In any event, the point is moot because plaintiff does not argue that his bladder problems prevent him from working.

As for plaintiff's complaints of pain and other "symptoms," however, the administrative law judge's findings are not adequate to explain his reasons for finding that those complaints were not credible. Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments. The administrative law judge complied with the first step, which was to determine whether an "underlying medically determinable physical or mental impairment"

21

could reasonably be expected to produce the individual's pain or other symptoms, but he ignored the second step, which requires evaluation of the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id.; see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004) (once administrative law judge found that claimant's medically determinable impairments could reasonably be expected to produce type of symptoms he discussed in his testimony, the next step was to assess credibility of testimony). When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding his symptoms on the sole ground that the statements are not substantiated by objective medical evidence. Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Id. at 703. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. SSR 96-7p; 20 C.F.R. § 404.1529(c). Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (administrative law judge's determination of

claimant's credibility "'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight'") (quoting SSR 96-7p).

The record contains no evaluation that complies with the ruling or indeed, any evaluation at all.  The administrative law judge made only the following statement:

> In consideration of the factors cited in Social Security Ruling 96-7p, the undersigned finds that the allegations of total disability lack a reasonable basis and are not credible.  In making this finding, it is noted that a settlement with the claimant's employer has resulted in a finding that the claimant is disabled from his current job and an agreement that any Social Security benefits should indemnify the employer and insurer.

AR 16.  He did not support this cryptic statement with any analysis of plaintiff's credibility. He did not even attempt to explain why he thinks that plaintiff's interest in obtaining indemnification for his workers' compensation carrier makes him less credible than any other applicant for social security disability benefits.

Although the credibility determinations of administrative law judges are given special deference by reviewing courts because of the administrative law judge's opportunity to see and hear the witness and to determine the witness's credibility, Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000), the decisions cannot be upheld unless the administrative law judge gives an adequate explanation of reasoning and the evidence on which it rests.  Id. at

811(administrative law judge must build accurate and logical bridge between evidence and result).   In this case, the administrative law judge has provided no understandable explanation of his reasoning.  As a consequence, the case must be remanded to allow him to undertake a credibility determination that complies with Social Security Ruling 96-7p.  In doing so, he should provide an explanation of his finding that plaintiff's complaints of pain are not credible and consider, among other things, the medications that plaintiff has been taking, either for pain or for his incontinence, prostatic enlargement or Peyronie's stricture. Whether or not these conditions are related to plaintiff's work injuries, the administrative law judge must evaluate the effect on the medications plaintiff takes to deal with them on his ability to work.  If he continues to believe that plaintiff's complaints of pain are not credible or that the medications plaintiff takes are unnecessary or have no effect on his ability to work, he should identify the evidence in the record that supports his findings.

Several minor matters deserve mention.  First, plaintiff's counsel devoted a part of his brief, dkt. #5, to talking about the "loosening" of one of the levels of the fusion surgery undertaken in 1998, without citing cited any part of the record that would support such a finding.  Even Dr. Garvey found that the earlier fusion was solid, AR 351, and Rieser said in August 2004 that the neck fusion was "excellent."  AR 338.  Second, it is not true that the administrative law judge did not comment on the alleged urological effects of plaintiff's previous injuries; as I have noted, he did discuss them.  Third, plaintiff is not entirely

24

accurate in saying that the doctors who performed the disability determination for defendant never saw all of the evidence.  At least as to Dr. Chan, the file contained information on the major portion of plaintiff's treatment and diagnoses before Chan gave his opinion in February 2006.  AR 250-57.

As to the government, it took the odd tack in its brief of arguing that plaintiff was not be believed because he had no good reason for delaying the surgery that would enable him to go back to work.  The government may be correct, but the administrative law judge never suggested that this was *his* reason for not believing plaintiff.  In fact, a fair reading of the administrative law judge's decision suggests strongly that he did not believe plaintiff had any need for more surgery.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Terrence J. Eskola's application for disability insurance benefits and supplemental security income is REVERSED and the case is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings

consistent with this opinion.

Entered this 12th day of January 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge